Hubbard *v.* Epps.

HUBBARD, EX'R. *v.* WM. J. EPPS *et al.*

1. STATUTE OF LIMITATIONS. *Wills. Administrators and executors. Trusts.* Where a will directs that certain lands shall be sold for the payment of debts generally, this does not create such a trust in favor of creditors as will prevent the running of the statute of limitations against the collection of their claims out of this specific property. The creditors must still present and collect their claims through the personal representative as such, subject to the same limitations that apply in other cases.

2. SAME. *Same. Non residents.* Where the testatrix lived·and died in Virginia, leaving land in this State, in a suit by creditors from that State seeking to subject the land in this to their claims, our statutes in favor of the personal representative here are held to apply, though they bar the debts of such creditors' whether the laws of Virginia would recognize them or not.

FROM MADISON.

Appeal from the Chancery Court. H. J. LIVING-STON, Chancellor.

TOMLIN & TOMLIN for complainant.

CAMPBELL & McCRORY, CARUTHERS & MALLORY and D. E. MYERS for defendants.

McFARLAND, J., delivered the opinion of the court.

An opinion was rendered in this cause at the last term, in which it was announced that the general direction in the will of Mrs. Martha B. Epps that her lands in Madison county, Tennessee, be sold to pay any debts she might owe, did not create such a

trust in favor of creditors generally as to prevent the further operation of the statute of limitations so as to bar their claim to satisfaction out of the lands, and that the claim of A. C. Page and others was barred because not filed within the time allowed for bringing suits or filing claims against personal representatives. A petition to rehear was filed and held under advisement until the present term.

We cited, in support of our conclusion, from Mr. Perry's work on Trusts, where the doctrine, as we stated it, is broadly announced as the law in the United States.

We have been furnished with an able and elaborate review of a number of the authorities cited to support the text by Mr. Perry, in which counsel have undertaken to show that they do not sustain the author, and that the rule is laid down differently in Hill on Trustees, and that the latter author is sustained by the great weight of not only English, but American authority.

We do not suppose that the few cases within our reach fairly indicate the general current of decision upon the question, and it would not be profitable to undertake to review them.

We must admit that the cases we have examined do not go to the length we have announced, but still we have the high authority of Judge Story for the proposition. He says: "A general direction in a will of personal estate to pay debts will not stop the running of the statute of limitations, or if the bar has already attached, remove it. The same rule is equally

applicable to the case of a devise of charge upon the real estate for the payment of debts. In no case will it take the debt out of the operation of the statute of limitations and prevent the running of the statute. But a direction to pay certain scheduled debts out of a particular fund of personal estate will take these debts, to the extent of the fund, out of the statute of limitations, and prevent its running. And the like doctrine would probably be applied to cases of trust charges upon real estate for the payment of scheduled debts." See Story E. J., sec. 1521*a*.

It is conceded that as to the personal estate any such general direction in a will as to payment of debts, is wholly inoperative in this respect. No valid trust is thus created, for the reason that the law makes the personalty assets for the payment of debts, and the rights of creditors are neither greater or less than without such direction in the will.

It would seem to follow as a logical conclusion that where lands were made assets for the payment of debts the same rule would apply, the only difference being that the lands are reached by a different process, and where not otherwise directed the personal assets are to be first exhausted.

By the common law, lands were not assets for the payment of debts generally, and courts of equity in favor of doing justice to creditors were ready to construe a devise or charge upon lands for the payment of debts as raising a trust by implication, which the creditor could enforce, and hence the doctrine originated. It is true the English courts have held that

the rule was not changed or affected by the acts making lands assets for the payment of debts, and many American cases have acquiesced in the holding, but as the effect of placing such charge or devise upon the ground of a valid trust between the executor and the creditor was to cut off the defense of the statute of limitations, the American courts have yielded to the doctrine, where they have done so at all, very reluctantly, and as the purposes of justice no longer favor the doctrine, the tendency has been to avoid construing devises of this character as implying a trust.

While admitting that where the trust is in terms created by the will, it is valid as such, yet the effect has been avoided by construing the will against the trust in all doubtful cases. See 2 Dev. & B. Eq., p. 101; *Carrington & Co.* v. *Manning's Heirs*, 13 Ala. We think the more direct way to deal with the question is to hold that the reason for declaring and enforcing such a trust no longer exists, and to abandon it altogether, especially when we have the high authority we have quoted to sustain us, and, moreover, what seems to us to be sound and logical reason upon the question. Lands are now assets for the payment of debts as well as personalty, though they are reached in a different mode, and if a general direction in a will, that the testator's debts shall be paid out of certain personal assets, does not create such a trust as to those assets in favor of the creditor as to stop or affect the statute of limitations, what sound reason can there be for applying a different

rule where the direction is to pay the debts by a sale of certain lands.

Before lands were made assets for the payment of debts, there was a reason for the distinction, and courts of high authority have said that the trust should still be upheld; that the law was not changed by making lands assets.   But we think this was simply adhering to the rule, after the reason for it had ceased to exist.   Our laws not only make lands assets for the payment of debts, but point out definitely how the lands may be reached.   Such a direction in a will may give the executor power to sell without applying for a decree of court, but the trust thus imposed upon him in respect to the debt is not otherwise materially different from the trust the law imposes upon an administrator.   No particular debts are recognized, no trust relation is thereby created between the executor and any particular individuals as creditors.   Their positions are antagonistic.   It is the executor's duty to resist all claims not legally established or known to be just, and to set up every legal and valid defense. This is certainly his duty where the debts are to be paid out of the personalty, whether the will so direct or not, and why should a different rule apply as to realty?   Is it possible that, upon a general direction of this character, all debts not then barred may come in for satisfaction out of this property without any limit as to time?   Should the administration of insolvent estates be thus indefinitely postponed?

It is further argued that our acts of 1827 and 1831, authorizing an executor or administrator to apply

to the chancery or circuit court for the sale of lands for the payment of debts, in terms only applies to cases where the executor is not authorized by will to sell, and therefore, where the executor is authorized by the will to sell the law is unchanged by the statute and remains as before, and in such case the land can only be reached by construing the will to create a trust in favor of the creditors.

But by another statute every debtor's property (and this included land), except such as may be specially exempt, is assets for the payment of his just debts. Code, sec. 2252. The land is none the less assets when the will directs that it shall be sold to pay the debts.

The right of the creditor to satisfaction does not depend upon the direction in the will, it exists independent of it.

And such a direction in a will only amounts to this: all of the property of a decedent, except such as may be exempt, is assets for the payment of his debts by positive law, independent of any direction to that effect in the testator's will, but the will may designate certain parts of the property to be first applied to the debts, and give the executor the power of sale, and this direction and power of the will will be followed by the courts, and so the acts pointing out the mode in which lands are to be subjected to the debts by decreee of courts, in terms only refers to cases where no power of sale is given by the will, for the reason that in such cases no decree of sale is necessary. But it does not follow from this that the

creditor's right depends upon such provision in the will, on the contrary, if for any reason this power of sale be not executed, there can hardly be any doubt that a court could, under the acts referred to, sell the land for the benefit of creditors.

The remedy could hardly be confined to a decree of the chancery court compeling the executor to execute the power, but either a circuit or chancery court might, by following the act of 1827, proceed directly to sell the land.

But it is again argued that the doctrine, that the statute of limitations does not bar debts as to the real estate charged by the will with their payment, has been recognized in applying the statute of limitations to the claims of executors against the estate.

It having been held that personal representatives are themselves limited by the statutes, there being no exception in their favor, and they must therefore show that they have retained their debts within the time limited; but it has been further held, that in order to bar their claims it must appear that they have had legal assets in their hands sufficient to satisfy their debts; that their failure to satisfy them out of equitable assets does not bar them.

This qualification of the general rule, it is earnestly maintained, shows that no statute applies as to such equitable assets, for if no statute applies against the executor, none can apply against the other creditors as they all stand upon the same ground. The rule holding personal representatives barred because of their failure to show, by their settlements, within the time

that they had retained their own debt, where they are otherwise legally excused from making a general settlement within the time, is a hard one, and it will be found that the qualification of the rule mentioned is not put alone upon the ground stated, but in *Harrison* v. *Henderson,* 7 Heis., it was held, that though the assets were legal assets, the executor's .claim would not be barred unless he had money in his hands out of which he might have retained his debt in time.

Without further discussion we are fully satisfied to hold that the statute of limitations are not abrogated by a general charge in a will directing that certain lands be sold for the payment of debts. The creditors must still present and collect their claims through the personal representative as such, subject to the same limitations that apply in other cases. Of course this discussion does not apply to a case where the will charges the payment of debts by name upon the testator's property.

Another question has been presented. The testatrix was a resident of Virginia, where she died, and her will was made and probated there, and it appears that all the creditors who have appeared are citizens of Virginia.

It has been submitted that the estate here should be distributed according to the law of Virginia, where, it is said, the claim of Epps would not be barred, or the fund should be transmitted to the principal administrator in Virginia.

This bill is filed by Hubbard as personal representative in this State. The statutues of this in his

favor we suppose must apply as to all creditors no matter where they reside. Whether, if there be a surplus, it should on proper application be transmitted to the Virginia administrator does not now arise.

Petition to rehear will be dismissed.